AO 243 (Rev. 09/17)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | EASTERN DISTRICT OF PENNSYLVANIA | |
|---|---|---|---|
| Name *(under which you were convicted)*:  OSVALDO RODRIGUEZ Jr. | | | Docket or Case No.:  DPAE5:24-cr-000238-001 |
| Place of Confinement:  FCI SEAGOVILLE, P.O.Box 9000, Seagoville, TX 75159 | | Prisoner No.:  95019-510 | |
| UNITED STATES OF AMERICA | | Movant *(include name under which convicted)* | |
| | V. | OSVALDO Rodriguez Jr. | |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:
   UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF PENNSYLVANIA
   601 Market St, Room 2609
   Philadelphia, PA 19106-1797
   (b) Criminal docket or case number (if you know):  DPAE 5:24-cr-000238-001

2. (a) Date of the judgment of conviction (if you know):  May 28, 2025
   (b) Date of sentencing:  May 28, 2025

3. Length of sentence:  60 months

4. Nature of crime (all counts):
   18 U.S.C. 2252(a)(2) and (b)(1)  RECEIPT OF CHILD PORNOGRAPHY (Count 1)
   18 U.S.C. 2252(a)(4)(b) and (b)(2)  POSSESSION OF CHILD PORNOGRAPHY  (Count 2)
   18 U.S.C. 1956(h)  MONEY LAUNDERING CONSPIRACY

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐       (2) Guilty ☒       (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)       Jury ☐       Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?       Yes ☐       No ☒

AO 243 (Rev. 09/17)

8.  Did you appeal from the judgment of conviction?        Yes ☐          No ☒

9.  If you did appeal, answer the following:
    (a) Name of court: _____
    (b) Docket or case number (if you know): _____
    (c) Result: _____
    (d) Date of result (if you know): _____
    (e) Citation to the case (if you know): _____
    (f) Grounds raised:




    (g) Did you file a petition for certiorari in the United States Supreme Court?        Yes ☐          No ☐
        If "Yes," answer the following:
        (1) Docket or case number (if you know): _____
        (2) Result:

        (3) Date of result (if you know): _____
        (4) Citation to the case (if you know): _____
        (5) Grounds raised:




10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes ☐    No ☒

11. If your answer to Question 10 was "Yes," give the following information:
    (a) (1) Name of court: _____
        (2) Docket or case number (if you know): _____
        (3) Date of filing (if you know): _____

AO 243 (Rev. 09/17)

   (4)  Nature of the proceeding: _____

   (5)  Grounds raised:

   (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐      No ☐

   (7)  Result: _____

   (8)  Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

   (1)  Name of court: _____

   (2)  Docket of case number (if you know): _____

   (3)  Date of filing (if you know): _____

   (4)  Nature of the proceeding: _____

   (5)  Grounds raised:

   (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐      No ☐

   (7)  Result: _____

   (8)  Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

   (1)  First petition:     Yes ☐    No ☐

   (2)  Second petition:   Yes ☐    No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

AO 243 (Rev. 09/17)

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:**   See ATTACHMENTS (5 Pages) Includes Grounds One, Two, and Three

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim ):

SEE ATTACHMENTS (5 Pages) Includes Grounds One, Two, and Three

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☐

(2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): _____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐     No ☐

AO 243 (Rev. 09/17)

    (4)   Did you appeal from the denial of your motion, petition, or application?

          Yes ☐      No ☐

    (5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

          Yes ☐      No ☐

    (6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

    (7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Two:**

    (1)   If you appealed from the judgment of conviction, did you raise this issue?

          Yes ☐      No ☐

AO 243 (Rev. 09/17)

(2)    If you did not raise this issue in your direct appeal, explain why:


(c)  **Post-Conviction Proceedings:**

(1)    Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☐

(2)    If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):


(3)    Did you receive a hearing on your motion, petition, or application?

Yes ☐        No ☐

(4)    Did you appeal from the denial of your motion, petition, or application?

Yes ☐        No ☐

(5)    If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐        No ☐

(6)    If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):


(7)    If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

AO 243 (Rev. 09/17)

**GROUND THREE:**

    (a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

    (b)  **Direct Appeal of Ground Three:**

        (1)  If you appealed from the judgment of conviction, did you raise this issue?

           Yes ☐     No ☐

        (2)  If you did not raise this issue in your direct appeal, explain why:

    (c)  **Post-Conviction Proceedings:**

        (1)  Did you raise this issue in any post-conviction motion, petition, or application?

           Yes ☐     No ☐

        (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

        (3)  Did you receive a hearing on your motion, petition, or application?

           Yes ☐     No ☐

        (4)  Did you appeal from the denial of your motion, petition, or application?

           Yes ☐     No ☐

        (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

           Yes ☐     No ☐

AO 243 (Rev. 09/17)

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

    (1)   If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐      No ☐

    (2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

    (1)   Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐      No ☐

    (2)   If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Grounds One, Two, and Three have not been presented in any federal court because the issues are 'so novel' that its legal basis was not reasonably available to counsel at trial, on appeal, or any other post-conviction relief motions or petitions.

AO 243 (Rev. 09/17)

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?    Yes ☐    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At the preliminary hearing:    Unknown

(b) At the arraignment and plea:    Unknown

(c) At the trial:    N/A

(d) At sentencing:    Unknown

(e) On appeal:    N/A

(f) In any post-conviction proceeding:    N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:    N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ☐    No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐    No ☐

AO 243 (Rev. 09/17)

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

N/A

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)  the date on which the judgment of conviction became final;

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev 09/17)

Therefore, movant asks that the Court grant the following relief:   That the statute of my conviction be found unconstitutional as applied to me and my conviction vacated; or in the alternatve, find the statutory sentencing scheme in the statute of my conviction unconstitutional and vacate my sentence and resentence me accordingly.

or any other relief to which movant may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _05 - 27 - 26_____.

(month, date, year)

Executed (signed) on _05-27-26_____ (date).

_Osvall Rodrey_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

ATTACHMENTS TO HABEAS PETITION

12.    Grounds for Relief

A.    Ground One:

All federal statutes criminalizing the production, distribution, viewing, and possession of child pornography are unconstitutional because they have demonstrably and consistently failed to achieve Congress's explicitly stated goal:  the eradication of child pornography from the market.  In 48 years since these laws were put in place with this singular goal, enforcement of these laws have become an arbitrary and irrational exercise of governmental power, thereby violating the principles of due process.  For this reason, my conviction should be vacated and the indictment dismissed.

Supporting Facts:

For nearly half a century since the enactment of the first federal legislation targeting child pornography in 1978, Congress and successive legislative amendments have pursued this singular objective -- the elimination of child pornography from the market -- through increasingly severe punishments and expansive prohibitions.  Despite these efforts, empirical evidence unequivocally demonstrates the persistant and, in many respects, expanding availability of child pornography, rendering the legislative scheme an arbitrary and ineffectual exercise of governmental power in relation to its sole avowed purpose.

The legislative history of these Acts reveal a steadfast determination to "stamp out," "readicate," and "destroy the market" for child pornography, driven by the profound moral imperative to protect children from exploitation.  The Child Pornography Act of 1978 was groundbreaking legislation representing the first federal attempt to address the child pornography problem.  Its stated objective was to curb the growing market for such material by criminalizing interstate commerce in child pornography.

This Act was amended twelve times since 1978 by expanding federal jurisdiction, criminalizing intrastate activities and possession, by broadening the definition of 'child pornography,' increasing penalties, and dramatically strengthening enforcement, all aiming toward achieving a singular goal: the elimination of child pornography from the market.

Despite these relentless legislative efforts and the considerable resources expended on enforcement over the past 48 years, child pornography remains widely available, proliferates globally, and is constantly adapting to new technologies and platforms (e.g., encrypted networks, peer-to-peer sharing, Dark Web). Law enforcement agencies continue to report a vast and increasing number of investigations, arrests, and seizures related to child pornography, indicating a persistent and robust market, rather than a diminishing one.

The very nature of child pornography distribution has evolved from physical materials to a decentralized, digital, and often international phenomenon, making complete elimination profoundly difficult, if not impossible. Congrsss found in 2003 that the previous failures of these Acts and amendments have resulted in the unfortunate increase of child pornography, congressional members calling it an explosion of child pornography in 2012, and the Supreme Court said in 2014 that this material has grown exponentially. The number of reports concerning child pornography has risen exponentially over the past decades, indicating an enduring and, in many ways, growing problem, contrary to the stated goal of eliminating the material.

Congress, in its repeated legislative amendments to the child pornography laws, have not merely stated that eradicating child pornography is "a" goal, but rather has consistently presented it as the sole, overarching, and defining purpose for its intervention. If the material were truly being eliminated, such continous legislative reinforcement targeting its existence would be less necessary. To continue enforcing a legislative scheme based solely on a goal that has demonstrably, persistently, and fundamentally been unmet for nearly half a century transforms the exercise of federal power from a rational pursuit of a legitimate end into an arnitrary imposition of criminal penalties without a coherent or achievable legislative purpose.

For these reasons, no rational basis exists for the continued enforcement of any of the child pornography prohibition laws, including the statute(s) of my conviction, where undeniable evidence demonstrate that Congress's self-imposed goal to eradicate the market of child pornography has consistently failed over a period of 48 years, rendering these laws an arbitrary and irrational exercise of governmental power, thereby violating the principles of due process.

B.      Ground Two:

The sentencing scheme in all federal child pornography statutes are unconstitutional because they are based solely on 'general deterrence;' and the primary element of general deterrence -- that people are rational -- cannot be met, where people engaged in this type of behavior become sexually aroused, and sexual arousal has been shown to substantially effect rational thinking and decision-making.

Supporting Facts:

As articulated in Ground One, for nearly half a century since the enactment of the first federal legislation targeting child pornography in 1978, that Congress and successive legislative bodies have pursued only one objective -- the elimination of child pornography from the market.

The sentencing factors found in §3553(a): retribution, specific deterrence, incapacitation, and rehabilitation, are fundamentally illsuited to achieve the goal of market elimination. These factors focus exclusively on the individual defendant and the specifics of their crime and not designed to dismantle the broader market. Only general deterrence possesses the scope and mechanism to credibly aspire to this goal.

The federal goal of elimination of child pornography from the market is unique in its absolute and unyielding nature. It represents a legislative declaration that this product is so abhorrent that its very existence must cease. Achieving this ambitious, market-level objective demands a sentencing philosophy that transcends individual accountability and seeks to influence the behavior of an entire population. Of the factors enumerated in §3553(a), only general deterrence possesses the scope and mechanism to credibly aspire to this goal.

The idea of general deterrence is that 'people are rational' and if punishment is severe enough, people will be afraid to commit crimes. Therefore, the key element of general deterrence is highly dependent on whether the target group's criminal activity is based on rational thinking or decision-making.

Recent scientific studies have found that sexual arousal significantly alters an individual's ability to evaluate or understand the long-term implications and potential consequences of sexually deviant behavior. Therefore, sexual arousal can have significant effects on rational thinking and decision-making.

Congress has found that child pornography causes sexual stimulation, so it is reasonable to believe that those trafficking in child pornography are sexually aroused. Therefore, child pornography offenders are incapable of rational thinking.

Considering that general deterrence only applies to defendants who think rationally, because they are cool, calculating and comparing the risks before deciding to engage in criminal activity, general deterrence cannot be considered as a factor when imposing a sentence for a person convicted of a child pornography offense, where these individuals do not think rationally.

For these reasons, general deterrence, along with all the other factors in §3553(a), cannot be considered when imposing a sentence for a person convicted of a child pornography offence because these offenders do not think rationally, and all the other factors are fundamentally illsuited to achieve the goal of market elimination. Therefore, Petitioner's sentence should be vacated and he should be resentenced accordingly.

C.    Ground Three:

The sentencing scheme in all federal child pornography criminal statutes are unconstitutional because imposing a sentence according to the statutory and sentencing guideline ranges have failed to achieve Congress's singular goal of eradicating child pornography from the market, despite 48 years of numerous congressional amendments to impose increasingly more severe penalties. For this reason, Petitioner's imposed sentence made no measurable contribution to acceptable goals of punishment and hense is nothing more than the purposeless and needless imposition of pain and suffering.

Supporting Facts:

As argued in Grounds One and Two, for nearly half a century since the enactment of the first federal legislation targeting child pornography in 1978, Congress and successive legislative bodies have pursued only one objective -- the elimination of child pornography from the market.

The acceptable goals of punishment are retribution, deterrence (specific and general), incapacititation, and rehabilitation, and none of these factors are capable of achieving the singular goal of eliminating child pornography from the market. In 48 years of sentencing based on these factors, this singular goal has **NEVER** been achieved.

For these reasons, the sentencing scheme in all child pornography offenses, including Petitioner's imposed sentence, makes no measurable contribution to acceptable goals of punishment and hense is nothing more that the purposeless and needless imposition of pain and suffering. Therefore, Petitioner's sentence should be vacated and he should be resentenced accordingly.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OSVALDO RODRIGUEZ Jr.                                                    PETITIONER

V.                                              Case No.  DPAE 5:24-CR-000238-001

UNITED STATES OF AMERICA                                                RESPONDENT

---

BRIEF IN SUPPORT OF PETITIONER'S §2255 MOTION

I.    Jurisdiction

This Court has jurisdiction over this habeas corpus petition because he is in fedeal custody for a violation of the Constitution of the United States.  See 28 U.S.C §2255(a).  This Court also has jurisdiction if this petition is filed after the 1-year period limitation has expired because a procedural default may be excused under 'equitable tolling' when the claim "is so novel that its legal basis was not reasonably available to counsel."  See Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed. 2d 130 (2010) (equitable tolling); and Reed v. Ross, 648 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed. 2d 1 (1984) ("so novel").

II.    Grounds Presented

(1) All federal statutes criminalizing the production, distribution, viewing, and possession of child pornography are unconstitutional because they have demonstrably and consistently failed to achieve their stated congressional goal:  the eradication of child pornography from the market.

(1)

(2)   The sentencing scheme in all federal child pornography statutes are unconstitutional where they are based solely on 'general deterrence' and the primary element of general deterrence -- that people are rational -- cannot be met because people engaged in this type of behavior are sexually aroused, and sexual arousal has been shown to substantially effect rational thinking and decision-making.

(3)   The sentencing scheme in all federal child pornography statutes are unconstitutional where they have failed to achieve the singular goal of Congress -- to eradicate the material from the market, despite 48 years of numerous congressional amendments to impose more severe penalties.

III.   Introduction

Child pornography is an atrocious and vile product that harms children, whether in the production or dissemination of the material.  For this reason alone child pornography must be prohibited and violators penalized to the degree of their culpability.  However, because the congressional purpose and goal of these statutes were poorly formulated and thoughtout, enforcement of these statutes have become arbitrary where it has become impossible to achieve the goal for which the statutes were created.

Congress's goal was to eradicate child pornography from the market through the prohibition of the product and by imposing severe penalties.  In retrospect, unforeseen circumstances -- like the advent of the internet and other technologies -- made this goal impossible to achieve, despite decades of amendments to cast a wider net of new prohibitions and imposing even more severe penalties.  In 48 years this singular goal has never been achieved.

Despite the absolute need to prohibit child pornography, this is a failed policy experiment because of Congress's poorly thoughtout singular goal of eradicating this material from the market.  Therefore, these statutes should be found unconstitutional because enforcing a law that has no chance of achieving its goal is an arbitrary and irrational exercise of government power and a violation of due process and/or cruel and unusual punishment.

(2)

IV.    Legislative History, Legislative Goal, and Achievement of that Goal

A.    Legislative History

In 1978, Congress enacted the Protection of Children Against Sexual Exploitation Act of 1977 (the 1978 Act), adding sections 2251, 2252, and 2253 to Title 18 of the United States Code. Pub. L. No. 95-225, 92 Stat. 7 (1978). Revelent to child pornography, Congress was concerned with the nationwide, multimillion dollar industry that harmed children and society as a whole. See S. Rep. No. 95-438, at 5-3 (1978)

In 1984, child pornography laws began to evolve through a series of amendments to cast a wider prohibitive net and to impose progressively more severe penalties. See:

(i.)  the Child Protection Act of 1984 (the 1984 Act), Pub. L. No. 98-292, §4 (1984) (raising fine penalties and adding the distribution offense);

(ii.) the Child Abuse Victim's Rights Act of 1986 (the 1986 Act), Pub. L. No. 99-500, amended in 99-591, §702 (1986) (increasing mandatory minimum for a person with prior offenses);

(iii.)  the Child Protection Restoration and Penalties Enhancement Act of 1990 (the 1990 Act), Pub. L. No. 101-647, §321 (1990) (adding the possession offense and increasing Sentencing Guidelines base offense levels);

(iv.) the General Government Appropriations Act of 1992 (the 1992 Act), Pub. L. No. 102-141, §632 (1992) (increasing Sentencing Guidelines base offense level);

(v.)  the Sex Crimes Against Children Prevention Act of 1995 (the 1995 Act), Pub. L. No. 104-71, §2, 3 (1995) (again increasing Sentencing Guidelines base offense levels);

(vi.) the Child Pornography Act of 1996 (the 1996 Act), Pub. L. No. 104-208, §121 (1996) (adding the virtual child pornography offense);

(3)

(vii.)   the Protection of Children from Sexual Predators Act of 1998 (the 1998 Act), Pub. L. No. 105-314, §503 (1998) (directing Sentencing Commission to increase Guidelines regarding a pattern of activity);

(viii.)   the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (the PROTECT Act), Pub. L. No. 108-21, §501 (2003), (substantial increases in penalty ranges, adding mandatory minimums, and Guidelines enhancements);

(ix.) the Adam Walsh Child Protection and Safety Act of 2006 (the Adam Walsh Act), Pub. L. No. 109-248, §203 (2006) (increasing penalty ranges);

(x.)   the Effective Child Pornography Prosecution Act of 2007) (the 2008 Act), Pub. L. No. 110-358, §102 (2008) (adding intrastate possession offense);

(xi.) the PROTECT OUR Children Act of 2008 (the 2008 Act), Pub. L. No. 110-401, §304 (2008) (adding 'morphed image' offense);

(xii.)   the Child Protection Act of 2012 (the 2012 Act), Pub. L. No. 112-206, §2 (2012) (doubling possession offense penalty when the offense involved a minor who had not attained 12 years of age).

B.      Legislative Goals and Judicial Interpretation

The 1978 Act and each of the subsequent amendments were all designed to achieve a singular goal:  the eradication of child pornography from the market. See:

(i.)   the 1978 Act hearings, S. Rep. No. 95-438, at 10 (1978) (stated purpose was to eradicate the child pornography market);

(ii.) United States v. Langford, 688 f.2d 1088, 1097 (7th Cir. 1982) ("Congress clearly intended that §2251 et. seq. eradicate the entire commercial chain in production, distribution, and sale of child pornography.") See also United States v. Petrov, 747 f.2d 824, 825 (2d Cir 1984) (Same);

(4)

(iii.)  United States v. Anderson, 803 f.2d 903, 906 (7th Cir. 1986) (Congress intended to eliminate child pornography from the market);

(iv.) United States v. Thomas, 893 f.2d 1066, 1068 (9th Cir 1990) (Congress created a "comprehensive statutory scheme to eradicate sexual exploitation of children");

(v.)  the 1996 Act Findings at (12 & (13), ("prohibiting the possession and viewing ...will encourage the possessors of such material to rid themselves of or destroy the material, thereby...eliminating the market for the sexual exploitative use of children"; and "the elimination of child pornography...provide[s] a compelling governmental interest for prohibiting the production, distribution, possession, sale, or viewing of [child pornography]'");

(vi.) United States v. Mento, 231 f.3d 912, 915 (4th Cir. 2000) ("since 1977"... congress has attempted to eliminate child pornography from the market);

(vii.)  the PROTECT Act Findings at (2), (3), & (15) (the governmental interest "extends to stamping out the vice of child pornography at all levels in the distribution chain. Osborne v. Ohio, 495 U.S. 103, 110 (1990)."; "The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product", quoting New York v. Ferber, 458 U.S. 747, 760 (1982); and "Congressional action is necessary now to ensure that...such material does not reappear, and even increase, on the Internet."); See also 149 Cong. Rec. H2950-1 (April 9, 2003, and 149 Cong. Rec. H3059-02 (April 10, 2003) (statements of Rep. James sensenbrenner);

(viii.)  United States v. McCoy, 323 f.3d 1114, 1130 (9th Cir 2003) ("The legislative history here tells us that Congress intended to eliminate the interstate commercial child pornography market, and nothing more.");

(ix.) United States v. Williams, 2004 U.S. Dist LEXIS 30603 at 14 (S.D. Fla, Aug. 20, 2004) (the "PROTECT Act seeks to achieve a similar eradication (as in Ferber) - the cessation of the trafficking of child pornography completely, including its existance on the internet");

(5)

(x.)  United States v. Jeronimo-Bautista, 425 f.3d 1266, at 1269-70 (10th Cir. 2005) ("comprehensive scheme developed by Congress [was] to eliminate the production...of child pornography.");

(xi.) the Adam Walsh Act Findings at (1)(E) & (2)(C) ("Prohibiting the intrastate production, transportation, distribution, receipt, advertising, and possession of child pornography...will cause some persons engaged in such intrastate activities to cease all such activities...[and] the government has a compelling State interest...to stamping out the vice of child pornography at all levels in the distribution chain.");

(xii.)  United States v. Smith, 459 f.3d 1276, 1285 (11th Cir. 2006) (finding intrastate child pornography was part of "its broader regulatory scheme designed to eliminate the market in its entirety.  Otherwise it would frustrate Congress's interest in completely eliminating the interstate market.");

(xiii.)  United States v. Polk, 508 F.Supp. 2d 89, 95 (D.Me. 2007) (these Congressional amendments embodies what "Congress has unwaveringly sought...over nearly three decades of legislation...to eradicate" child pornography.);

(xiv.)  Connection Distrib. Co. v. Holder, 557 f.3d 321, 362-63 (6th Cir. 2009) ("Congress has chosen to...pass[] a flat ban on [child pornography in all forms.  These] regulations advance the goal of preventing the sexual exploitation of children by destroying the market for materials depicting such activity.");

(xv.) Free Speech Coal. v. AG of the United States, 677 f.3d 519, 534 (3d Cir. 2012) ("The statutes serve purposes...namely the protection of children against sexual exploitation and the elimination of child pornography.:);

(xvi.)  United States v. Guite, 652 Fed. Appx. 829, 833 (11th Cir 2016) (these statutes are a "comprehensive scheme to eliminate the market for child pornography");

(xvii.)  United States v. Skinner, 536 F.Supp. 3d 23, 37 (E.D. Va 2021) (by its plain language and stated purpose, these child pornography prohibition laws represents a "comprehensive statutory scheme to eradicate sexual exploitation of children.");

(6)

(xviii.) <u>United States v. Zarif</u>, 2023 U.S. Dist. LEXIS 61816 at 2 (M.D. Fla., 7, 2023) (Section 2252(a) is part of a comprehensive scheme to eradicate the sexual exploitation of children);

(xix.)  <u>United States v. Anderegg</u>, 2025 U.S. Dist. LEXIS 222012 at 23 (W.D. Wis. Feb. 13, 2025) (cites Congress's compelling interest in banning production and possession of child pornography is the "eradicating the market for materials showing the sexual exploitation of children.");

It is clear that from Congressional Findings and judicial interpretations of these legislative Acts, Congress wants to achieve a singular goal:  The eradication of child pornography from the market.

C.    Congressional Failure to Achieve their Goal

Since 1978, the singular goal of eradicating child pornography from the market has never been achieved. See:

(i.)  In 1986, attorney General Edwin Meese, III, issued a Final Report in his Commission on Pornography ("Meese Report"), finding that, although efforts to eradicate child pornography had "drastically curtailed its public presence [they] ha[d] not ended the problem. [While] sexual exploitation of children has retreated to the shadows, [the Commission observed that] no evidence...suggests that children are any less at risk than before" the statutes were enacted and later amended.  <u>U.S. Dep't of Justice, Attorney General's Commission on Pornography: Final Report (1986), at 134</u>

(ii.) the 1986 Act Findings at (2), (recognizing their failure by "strengthening laws proscribing such activity.");

(iii.) <u>141 Cong. Rec. H4124 (daily ed. Apr. 4, 1995)</u> (citing "reports of child pornography becoming increasingly prevalent.");

(7)

(iv.) Statement of Sen. Joseph R. Biden, Hearing on Child Pornography Protection Act of 1996, avalable at 1996 WL 292976 (F.D.C.H.) (June 4, 1996) (acknowledging the 1996 Act was necessary because Congress "found gaps in the coverage of the criminal law", imply ing that the previous Act and amendments had failed to achieve their stated goal.);

(v.) United States v. Rodia, 194 f.3d 465, 477 n. 5 (3d Cir 1999) (finding that "commercial manufactures of [child] pornography were insufficiently deterred");

(vi.) Ashcroft v. Free Speech Coalition, 535 U.S. 234, 267-73 (2002) (dissent by J. Rehnquist, joined in part by J. Scalia) (deferring to congressional Findings that "rapid advancing technology soon will make it all but impossible" to enforce prohibitions against child pornography.);

(vii.) 149 Cong. Rec. 5231-01, 5236-237 (2003) (congressional hearings acknowledging that our nation is "flooded" with child pornography.); See also H.R. Rep. No. 108-66 at 51 (2003) (finding that congressional and court imposed "len ient" sentencing is the reason for the failure to achieve the goal of Congress);

(viii.) the PROTECT Act Findings at (13) (acknowledging that the previous Act and amendments failure to achieve the stated goal will cause child pornography offenses to "continu[ally] grow increasingly worse.");

(ix.) United States v. Williams, 2004 U.S. Dist. LEXIS 30603 at 13-14 (S.D. Fla. Aug. 23, 2004) (finding that "law enforcements ability to 'dry up the market' has been hindered by new technology.");

(x.) 151 Cong. Rec. 4236 (Feb. 24, 2005) (finding that the Internet "has permitted child pornographers to disseminate their product exponentially..."), See also 151 Cong. Rec. 20221 (2005) (acknowledg ing "a substantial interstate market for child pornography exists...");

(8)

(xi.) United States v. Croxford, 170 Fed. Appx. 31, 39 n. 3 (10th Cir. 2006) (the court of appeals "share the district court's suspicion that the current market for child pornography is even more far reaching...than did the market that existed when Congress originally enacted these statutes" in 1978.);

(xii.)    the 2006 Act Findings at (1)(C) (finding that "technological advances have had the unfortunate result of greatly increasing the interstate market in child pornography.");

(xiii.)    United States v. Stern, 590 f.supp. 2d 945, 952 (N.D. Ohio 2008) (holding that "no court should be deluded into beliving that limiting domestic consumption alone can eradicate the international market for child pornography.");

(xiv.)    the 2008 Act Findings at (4) & (5) (finding that "Child pornography is readily available through virtually every Internet technology [and] has resulted in an explosion in the multijurisdictional distribution of child pornography.");

(xv.) United States v. Beiermann, 599 f.supp 2d 1087, 1103 (N.D. Iowa 2009) ( finding that federal judges "cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the internet [and the congressional objective], while laudable, is not being achieved according to any empirical or other evidence...");

(xvi.)    Ernie Allen, President and CEO, National Center for Missing and Exploited Children (NCMEC), prepared statement to Sentencing Commission, note 16 at 8-9 (Oct. 20, 2009) (noting that "incidents of child pornography...continue to expand exponentially.");

(9)

(xvii.) H.R. Rep. No. 112-638 (2012), reprinted in 2012 U.S.C.C.A.N. 662, 663 (acknowledging "an explosion in the market for child pornography");

(xviii.) Senator Charles E. Grassley, Rep. Lamar Smith, and Rep. F. James Sensenbrenner, Jr., Letter to the United States Sentencing Commission (Feb. 14, 2012) (acknowledging that "Internet child pornography is one of the fastest growing crimes in America, increasing at an average of 150% per year [and describing it as an] explosion in child pornography-related crimes.");

(xix.)  Patti B. Saris, Chair, U.S. Sentencing Commission, 2012 Report to Congress: Federal Child Pornography Offenses, at 3 (acknowledging that child pornography "has grown exponentially.");

(xx.) Letter from Anne Gannon, United States Department of Justice, to Patti B. Saris, Chair of the United States Sentencing Commission at 1 (March 5, 2013) (DOJ Letter) (the DOJ agreed "with the Commission's conclusion that...the evolution of the child pornography market have led to a significantly changed landscape -- one that no longer adequately represented by the existing guidelines.");

(xxi.)  Paroline v. United States, 572 U.S. 434, 440 (2014) (acknowledging that child pornography "has grown exponentially.");

(xxii.)  United States v. Henry, 827 f.3d 16, 25 (1st Cir. 2016) (held that the "[w]idespread use of [technology] has led to an apparent explosion in [child pornography].");

(xxiii.) United States v. Skinner, 536 f.supp. 3d 23, 33-34 (E.D. Va 2021) (acknowledging an "explosion in the multijurisdictional distribution of child pornography");

(10)

(xxiv.) United States v. Kuehner, 126 f.4th 319, 322, 2025 U.S. App. LEXIS 1028 at 2 (4th Cir. 2025), cert. denied, 145 S.Ct.2762, 222 L.Ed 2d 1049 (2025) acknowledging an "exponential increase [in the] broad dissemination of [child pornography]");

As evidenced by the information provided above (and by no means exhaustive), between 1978 and 2025, the only congressional goal regarding the child pornography prohibition statutes is the complete eradication of child pornography from the market; and that this goal, in any form or fashion, has never been achieved.

## V.    Argument: Ground One

All federal statutes criminalizing the production, distribution, viewing, and possession of child pornography are unconstitutional because they have demonstrably and consistently failed to achieve Congress's explicitly stated and singular goal:  the eradication of child pornography from the market.

### A.    Legal Standard

The Due Process Clause of the Fifth Amendment guarantees that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Laws that do not burden fundamental rights are only required to bear some rational relation to a legitimate governmental purpose. Heller v. Doe, 509 U.S. 312, 319-20 (1993).  To preveil under the rational basis standard, it must be established that a statute is "wholly arbitrary and irrational in purpose and effect, i.e., not reasonably related to the legitimate congressional purpose." Hammond v. United States, 786 f.2d 8, 13 (1st Cir. 1986) (citing United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 174-77, 101 S.Ct. 453, 66 L.Ed. 2d 368 (1980))

"The first step in determining whether legislation survives rational-basis scrunity is identifying a legitimate governmental purpose -- a goal -- which the enacting governmental body could have been pursuing.  The actual modivations of the enacting governmental body are entirely irrelevant."  FCC v. Beach Communications, Inc., 508 U.S. 307, 313-14, 113 S.Ct. 2096, 124 L.Ed. 2d 211 (1993).  "The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose."  Id.

B.      Step One -- Identifying the Governmental Purpose/Goal

Section IV.(B.)(i. - xix.) above clearly identifies Congress's singular goal as the complete eradication of child pornography from the interstate market, and this has been held by courts to be a legitimate governmental purpose.  See  United States v. Polizzi, 549 f.supp. 2d 308, 377 (E.D.N.Y. 2008) ("the statutory regulation of child pornography in order to advance the legitimate governmental interest of protecting children is not irrational."; Ctr. for Democracy & Tech v. Pappert, 337 f.supp. 2d 606, 611 (E.D. Penn 2004) ("The elimination of child pornography is an important goal").

C.      Step Two -- Whether the legislation Would Further the Hypothesized Purpose

Section IV. (C.)(i. - xxiv.) above clearly demonstrate, by admission of Congress, the Department of Justice, Attorney General ("Meese Report"), and numerous case law  that the singular goal of eradicating child pornography from the market has not been met at any time since 1978 up to the filing of this Petition.  Therefore, no rational basis exists to believe that, after 47 years of congressional failure to achieve its singular goal of eradicating the market of child pornography, continuation of enforcing these-prohibitions. will further this goal.

(12)

D.      Due Process Facial Challenge

A Petitioner "can only succeed in a facial challenge by establishing that no set of circumstances exist under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." Wash. State Grange v. Wash. Rep. Party, 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed. 2d 151 (2008). A "legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." Hodel v. Indiana, 452 U.S. 314, 331-32, 101 S.Ct. 2376, 69 L.Ed. 2d 40 (1981).

Here, the Petitioner is alleging that the prohibition of the production, distribution, viewing, and possession of child pornography found in Sections 2251, 2252, and 2252A is arbitrary and irrational where this prohibition has failed to achieve its singular goal -- the eradication of child pornography from the interstate market -- in the 47 years since its enactment in 1978. Congress's own findings admit exponential market growth throughout the ENTIRE 47 years since enactment, demonstrating that no set of circumstances exist under which these statutes would be valid, compelling invalidation as the laws bear no rational relation to their eradication aim, leaving the Court no choice but to vacate the conviction.

This court must grant relief under binding Supreme Court precedent, as the statutes' persistent failure to eradicate the market despite 47 years of amendments renders them arbitrary and without rational basis, akin to the sodomy laws invalidated in Lawrence v. Texas, 539 U.S. 558 (2003), where the Court held that criminal prohibitions lacking a legitimate purpose or rational relation to privacy interests violates substantive due process under the Fifth Amendment. Similarly, in City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985), the Court applied rational basis review to strike down a zoning ordinance as irrational when its justifications (e.g., community fears) failed to advance any legitimate goal.

(13)

The Petitioner agrees that child pornography is an atrocious and vile product that harms children and should be prohibited. However, "the role of the court is to apply the [legislative goal] as it is written -- even if we think some other approach might accord with good policy." Lewis v. City of Chicago, 560 U.S. 205, 217, 130 S.Ct. 2191, 176 L.Ed. 2d 967 (2010). "The fact that Congress might have acted with greater clarity or foresight does not give courts a carte blanche to redraft statutes [or their legislative intent] in an effort to achieve that which Congress is perceived to have failed to do." United States v. Locke, 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed. 2d 64 (1985).

E.    Summary of Ground One

For these reasons, these statutes should be found unconstitutional because enforcing a law that has no chance of achieving its goal is an arbitrary and irrational exercise of governmental power and a violation of due process. Therefore, the conviction(s) in this case should be reversed and the case dismissed.

(14)

VI.    Argument: Ground Two

The sentencing scheme in all federal child pornography statutes are unconstitutional where they are based solely on 'general deterrence' and the primary element of general deterrence -- that people are rational -- cannot be met because people engaged in this type of behavior are sexually aroused, and sexual arousal has been shown to substantially effect rational thinking and decision-making.

A.    Legal Standard

The Due Process Clause of the Fifth Amendment guarantees that no person shall "be deprived of life. liberty, or property, without due process of law." U.S. Const. amend. V.  Due process of law "requires only that a sentencing scheme be rational and not based on [an] arbitrary distinction."  Chapman v. United States, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed 2d 524 (1991). "The [Petitioner] bears the burden of proving the absence of a rational relationship between [the sentencing scheme of a statute] and a legitimate governmental objective." United States v. Alexander, 48 f.2d 1477, 1491 (9th Cir. 1995); See also Vance v. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 59 L.Ed. 2d (1979).

Section 3553 of Title 18 states that "The court shall impose a sentence sufficient, but not greater than necessary [and] in determining the particular sentence to be imposed, [the court] shall consider " four factors:  retribution, deterrence, incapacitation, and rehabilitation. 18 U.S.C. 3553(a) Petitioner intends to prove that no rational relationship exists between the singular goal of congress -- the eradication of child pornography from the interstate market --  and any of the sentencing factors, except general deterrence, which cannot be considered when sentencing a person convicted of a child pornography offense.

(15)

B.    The Unique 'Market' for Child Pornography and the Goal of Eradication

Unlike other illicit markets (e.g., drugs, stolen goods) where law enforcement often aims for disruption, reduction, or containment, the congressional objective concerning child pornography is one of absolute eradication. There is no 'safe,' 'regulated,' or 'legitimate' form of child pornography. Its mere existance constitutes ongoing child abuse and exploitation. The market for child pornography is a network of producers, distributers, and consumers, all of whom are directly contributing to or participating in the abuse of children.

Legislative history and judicial pronouncement consistently affirm that federal statutes targeting child pornography aims to protect children from exploitation and abuse, prevent the creation and dissemination of materials that perpetuate such abuse, and ultimately, eliminate the demand and supply for such materials entirely. See section IV.(B.) above.

B.    Why §3553(a) Factors, other than General Deterrence, Cannot Achieve Market Elimination

While the §5335(a) factors, other than general deterrence, are critical for crafting a just sentence for an individual offender, they are fundamentally illsuited to achieving the macro-level goal of market elimination. See for example:

(i.) Retribution -- the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. §3553(a)(2)(A). Retribution is a cornerstone of criminal justice, ensuring that offenders receive deserved punishment for their actions. While certainly a component of any sentence for child pornography, it is inherently backward-looking. Punishing an offender for their past conduct, no matter how justly or severely, does not inherently prevent 'other' potential offenders from entering the market or guarantee its cessation. It addresses the moral culpability of the individual, not the systemic problem of the market.

(16)

(ii.)      Specific Deterrence -- the need for the sentence imposed to afford adequate specific deterrence to criminal conduct. 18 U.S.C. §3553(a)(2)(B)-(C) Specific deterrence aims to prevent the defendant from committing future crimes. While critical for protecting the public from a particular offender, removing one actor from the child pornography market, even permanently, does not elimniate the market itself. The demand and supply mechanism, driven by other actors, can readily persist without that one individual, as evidenced by 47 years of failure to achieve that goal. The 'next' person is not deterred by this specific offenders punishment.

(iii.)      Incapacitation -- the need for the sentence imposed to protect the public from further crimes of the defendant. 18 U.S.C. §3553(a)(2)(C). Incapacitation, typically through imprisonment, prevents the defendant from committing crimes while incarcerated. Like specific deterrence, it addresses the risk posed by a single individual. However, the child pornography market is vast and global. Incapacitating one offender, or even many, without a broader deterrent message, leaves the underlying market structers, networks, and potential new entrants largely untouched.

(iv.)      Rehabilitation -- the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2)(D). This factor focuses squarely on rehabilitation and reintergration of the individual offender. While a laudable and often necessary goal, rehabilitation does nothing to eliminate the child pornography market as a whole. It aims to transform a past offender into a productive member of society, but does not deter new entrants into the market or dry up the existing supply and demand.

(v.)      Restitution -- is about compensating the victims for the harm suffered. 18 U.S.C. §2259. It does not prevent the creation of new child pornography or deter future participation in the market. Its focus is on rectifying consequences, not preventing the underlying criminal activity on a systemic level.

(17)

C.     General Deterrence as the Sole Mechanism for Market Elimination

General deterrence functions by sending a clear, unequivocal message to the public at large that engaging in any aspect of the child pornography market, be it production, distribution, or even passive possession will result in severe penalties.  The objective is to make the potential costs (loss of liberty, social stigma, financial ruin) so high that the perceived benefits of participation in the market are overwhelmingly outweighed. See United States v. Safehouse, 985 f.3d 225 (3d Cir. 2020)(comparing the deterrent effect of regulating the supply and demand of wheat to the deterrent effect of regulating the supply and demand of child pornography market); United States v. Durham, 902 f.3d 1180 (10th Cir. 2018)(same).

By threatening substantial prison sentences, including lengthy mandatory minimums and statutory maximums, general deterrence aims to dissuade individuals from creating new content or facilitating its spread.  The intent is to make the 'business' of child pornography so risky and costly that it becomes unsustainable.  The goal is to dry up the consumer base by instilling fear of detection and punishment -- i.e., eliminate the market of child pornography.

The exceptionally severe penalties, lengthy mandatory minimum sentences, and expansive definitions within federal child pornography statutes (e.g., 18 U.S.C. §§2251, 2252, 2252A, & 2256) are direct manifestations of a legislative intent to maximize general deterrence.  These provisions are not merely about punishing the individual offender, but about broadcasting a powerful deterrent message to anyone who might consider participating in this heinous market.  See United States v. Camiscione, 591 f.3d 823, 834 (6th Cir. 2010) ("General deterrence is crucial in the child pornography context"); United States v. Gross, 2024 U.S. Dist. LEXIS 160091 at 11 (W.D. Ind., Sept. 5, 2024) (same); United States v. Medearis, 451 f.3d 918, 920-21 (8th Cir. 2006) (in the child pornography context."general deterrence...is one of the key purposes of sentencing, and the district court [must] give that matter it proper weight.")

(18)

In sum, the federal congressional goal of eliminating child pornography from the market is unique in its absolute and unyielding nature. It represents a legislative declaration that this 'product' is so abhorrent that its very existence must cease. Achieving this ambitious, market-level objective demands a sentencing philosophy that transcends individual accountability and seeks to influence the behavior of an entire population. Of the factors enumerated in 18 U.S.C. §3553(a), only general deterrence possesses the scope and mechanism to credibly aspire to this goal. The other factors, while essential to individual justice, are inherently limited to the specific offender or the remediation of past harm, and thus connot, by themselves, effectuate the systemic elimination of the child pornography market. Therefore, it is respectfully contended that Congress's singular focus on eliminating child pornography from the market is predicated solely on the principle of general deterrence.

D.      Key Element of General Deterrence is Rational Thinking

The idea of general deterrence is that 'people are rational' and if punishment is severe enough, people will be afraid to commit crimes. See **Gary S. Becker, Crime and Punishment: An Economic Approach, 76 J.Pol. Econ. 169, 217 (1968)** (he received a Nobel Prize in 1992 for his role he played in this theory); See also United States v. Warner, 792 f.3d 847, 860-61 (7th Cir. 2015) (holding that white collar criminals are "prime canidates for general deterrence because they (presumably) act rationally, calculating and comparing the risks and rewards before deciding to engage in criminal activity."); United States v. Peppel, 707 f.3d 627, 637 (6th Cir 2013) ("Because economic and fraud based crimes are more rational, cool, and calculated..., those crimes are prime canidates for general deterrence.", quoting United States v. Martin, 455 f.3d 1227, 1240 (11th Cir. 2006)).

In sum, a key element of general deterrence is highly dependant on whether the target group's criminal activity is based on rational thinking or decision making.

E.        Sexual Arousal can have Significant Effects on rational Thinking

Recent scientific studies have found that sexual arousal significantally alters an individual's perspectives and reduces their ability to evaluate or understand the long-term implications and potential consequences of sexually deviant behavior.  See for example:

(i.)  Ariely, D., &Loewenstein, G., The Heat of the Moment:  The Effect of Sexual Arousal on Sexual Decision Making, Journal of Behavioral Decision Making, 19(2), 87-98 (2006);

(ii.) Van der Velde FW, van der Plight J, Hooykaas C., Jumping Head First into the AIDS Pool:  The Impact of Sexual Arousal on Judgements of Sex Risk vs. Benefit. Health Psychology, 15(5), 371-375 (1996) (finding high sexual arousal can substantially reduce perceptions of risk and inflate perceptions of benefit,thus impacting on rational decision-making.);

(iii.)   Schachtman, T.R., & Heckers, S., Hot Cognition:  An Exploration of the Role of Arousal in Decision-Making, Journal of Behavioral Neuroscience Research (2012) (highlights how sexual arousal can negatively impact decision-making);

(iv.) Loewenstein, G, Sexual Arousal and Decision-Making, in Handbook of Contemporary Behavioral Economics (2007) (study provides evidence that sexual arousal influences peoples decisionmaking, leading them to make riskier decisions and be more optimistic about their chances of receiving a positive outcome.).

These examples clearly demonstrate that sexual arousal can have significant effects on rational thinking and decision-making.  It should be noted that no authoritive study exists that contridicts these findings.

(20)

F.     Child Pornography Offenders are Incapable of Rational Thinking

Congress has found that "child pornography is often used by pedophiles and child sexual abuers to stimulate and whet their own appetites..." See the 1996 Act Findings at (4); S. Rep. No. 104-358 at 12-13 (1996); and also United States v. Pelloski, 31 f.supp. 3d 952, 954 (S.D. Ohio 2014) (finding that "Most individuals before the Court...use the image of child pornography for sexual stimulation."). Therefore, it is clear that, at least, 'most' individuals who traffic in child pornography are sexually aroused.

As demonstrated above, sexual arousal can have significant effects on rational thinking or deciston making. Therefore, child pornography offenders are incapable of rational thinking.

G.     General Deterrence Factor Cannot be Applied to Child Pornography Offenses

As demonstrated above, general deterrence only applies to defendants who are people who think rationally because they are 'cool', 'calculating and comparing the risks and rewards before deciding to engage in criminal activity." See Peppel and Warner supra. However, people predisposed to child pornography offenses are incapable of rational thinking. Therefore, general deterrence cannot be considered as a factor when imposing a sentence for a person convicted of a child pornography offense.

H.     Sentencing Scheme in All Federal Child Pornography Offenses are Unconstitutional

Section 3553(a) states that the court 'shall' consider the four factors of retribution, deterrence, incapacitation, and rehabilitation when imposing a sentence to assure that the sentence is 'sufficient, but not greater than necessary'. As demonstrated above, all of the factors are fundamentally illsuited to achieve the macro-level goal of market elimination of child pornography, except general deterrence, making them arbitrary or capricious when considered for sentencing purposes in a child pornography offense case.

(21)

As demonstrated, the sentencing scheme violates due process by imposing penalties without rational basis, as child pornography offenders are not rational actors susceptible to deterrence (see psychological studies cited). Supreme Court precedent mandates invalidation: In Papachristou v. City of Jacksonville, 405 U.S. 156 (1972), the Court struck down a vagrancy ordinance as arbitrary and vague under due process, noting it "places unfettered discretion in the hands of ...police" without advancing public order (id. at 168-71). Here, §3553(a)'s deterrence factor is similarly irrational, as Congress's goal remains unmet despite escalating penalties.

The Eighth Circuit has granted relief in analogous context, as in Sisney v. Kaemingk, 15 f.4th 1181 (8th Cir. 2021), where it held a pornography ban unconstitutional as applied because it lacked rational relation to penological goals under Turner v. Safley, 482 U.S. 78 (1987), emphasizing that restrictions must advance legitimate interests without arbitrariness. This binds district courts in that Circuit to find the scheme arbitrary, requiring resentencing or vacatur, as continued enforcement despite failure mirrors the disproportionality invalidated in Coker v. Georgia, 433 U.S. 584 (1977) (striking death penalty as excessive under Eighth Amendment, incorporated via due process).

For these reasons, the sentencing scheme in all child pornography statutes are unconstitutional where no factor exists to determine whether a sentence imposed is 'sufficient, but not greater than necessary', as required by §3553(a).

I.    Summary of Ground Two

For the reasons set forth in Ground Two, the sentencing scheme in all child pornography statutes, including the one relevant to the Petitioner, should be found unconstitutional and the Petitioner resentenced accordingly.

(22)

VII.    Argument:  Ground Three

The sentencing scheme in all federal child pornography statutes are unconstitutional where they have failed to achieve the singular goal of Congress -- to eradicate the material from the market, despite 47 years of numerous congressional amendments to impose more severe penalties.

A.    Legal Standard

The Eighth Amendment to the United States Constitution prohibits 'cruel and unusual' punishments. U.S. Const. amend. VIII. A "punishment is 'excessive' and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." Coker v. Georgia, 433 U.S. 584, 592 (1977).

(23)

The 'acceptable goals of punishment' are outlined in 18 U.S.C. §3553(a) as retribution, deterrence, incapacitation, and rehabilitation. See Harmelin v. Michigan, 501 U.S. 957, 999, 111 S.Ct. 2680, 115 L.Ed. 836 (1991); Cabrera v. Cates, 2023 U.S. Dist. LEXIS 139152 at 50, Case No. 20-cv-01256-JST (N.D. Cal. Aug. 9, 2023).

B.     Sentencing Factors of §3553(a) Have Not Achieved the Goals of Congress in 47 Years

As argued in section IV. above, the singular goal of Congress is the eradication of child pornography from the market, and that goal has NEVER been achieved since 1978, when the child pornography prohibition laws were created, despite numerous amendments, casting a wider net and imposing more severe penalties.

C.     Sentencing Scheme Makes No Measurable Contribution to the Acceptable Goals of Punishment

As argued in Ground Two -- Section VI. above -- each of the four 'acceptable goals of punishment' (sentencing factors found in §3553(a)) are fundamentally illsuited to achieve the goal of market elimination of child pornography, except general deterrence, making them arbitrary or capricious when considered for sentencing purposes in child pornography offense cases; and general deterrence can not be considered when imposing a sentence because child pornography offenders do not think rationally. Therefore no 'acceptable goal[] of punishment' exists to determine whether a sentence imposed is 'sufficient, but not greater than necessary', as required by §3553(a).

For these reasons, the sentencing scheme in all child pornography offense laws make no measurable contribution to acceptable goals of punishment and hense is nothing more than the purposeless and needless imposition of pain and suffering. Coker, supra; See also Harmelin v. Michigan, 501 U.S. 957 (1991) (Kennedy concurrence on proportionality -- arguing excessive penalties without effect violate Eighth Amendment via due process).

(24)

D.  Conflicts in Decisions of the Lower Courts Demonstrates Proof that Statutes are Unconstitutional

The Supreme Court has held that "conflicts in decisions of the lower courts [is] proof that the statute is unconstitutional." Johnson v. United States, 576 U.S. 591, 628 (2015) (Justice Alito's dissening Opinion summarizing the Majority Opinion at 599-602).  In child pornography cases, widespread sentencing disparities are well documented, demonstrating severe conflicts in the lower courts.  See United States Sentencing Comm'n, Special Report to Congress: Federal Child Pornography Offenses, at 207-244 (2012) (finding "[many judges and parties in §§2G2.2 cases believe the current statutory...structure is outmoded, [and] does not make meaningful sentencing distinctions among offenders, and is overly severe in some cases." at 244); and United States Sentencing Comm'n, Federal Sentencing of Child Pornography: Production Offenses, at 47-60 (2021) (finding that since the 2012 Report, severe sentencing disparities in similatly situated offenders have persisted with sentencing ranges between time served to 240 months, at 48, 59).

In formulating 18 U.S.C. §3553(a)(6), Congress included "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct" as a factor required in determining the appropriate sentence.  However, the Eighth Circuit Court of Appeals has held that lower courts in their Circuit are not required to consider this Congressionally mandated factor because there is no principled basis (refering to the extreme sentencing disparity across the nation) for a appellate court to say which defendants received the appropriate sentence.  United States v. Keys, 918 f.3d 982, 989 (8th Cir. 2019)

·  The Eighth Circuit's admittance that they were unable to comply with a congressionally mandated sentencing factor simply because of national sentencing disparities in child pornography cases, demonstrates further proof that the statutory sentencing scheme proliferated by congressional Acts is unconstitutional, where they make no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless and needless imposition of pain and suffering. See Coker, 433 U.S. at 592.

(25)

E.    Summary of Ground Three

For the reasons set forth in Ground Three, the sentencing scheme in all child pornography statutes, including the one relevant to the Petitioner, should be found unconstitutional and the Petitioner resentenced accordingly.

VIII.    CONCLUSION

WHEREFORE, Petitioner respectfully prays that this Honorable Court grant each Ground in this Petition with the requested relief.

RESPECTFULLY SUBMITTED this 27 day of May, 2026.

_____, Pro Se
Petitioner
OSVALDO RODRIGUEZ Jr.
Reg. No. 95019-510
FCI SEAGOVILLE
P.O. Box 9000
Seagoville, TX 75159

(26)



OSVALDO RODRIGUEZ Jr.
Reg. No. 95019-510
FCI SEAGOVILLE
P.O. Box 9000
Seagoville, TX 75159

NORTH TEXAS P&DC
DALLAS TX 750
TUE 02 JUN 2026
AFSM 2/1 01:09:23



RECEIVED
JUN 0 9 2026
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
601 Market St., Room 2609
Philadelphia, PA 19106-1797